

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1101
lwalsh@walsh.law

June 6, 2024

**VIA ECF**
Honorable Michael A. Hammer, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> Re:  *Gesture Technology Partners, LLC v. LG Electronics Inc., et al.*
>        Civil Action No.: 2:21-cv-19234 (EP-MAH)

Dear Judge Hammer:

This firm, together with DLA Piper LLP, represents Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively "LGE") in the above-referenced matter. We write in response to GTP's letter to Your Honor dated June 6, 2024, which incorrectly frames an issue between the parties as a simple discovery dispute.

In truth, LGE does not – and has never – refused to provide discovery to which GTP is entitled. What LGE *does* take issue with – and GTP deliberately fails to mention in its letter – is that GTP is entirely seeking discovery on products *that are not accused in this case*.

For over three years LGE has been diligently chasing Plaintiff to provide proper infringement contentions that would adequately put LGE on notice of GTP's real infringement theories. LGE is highly sensitive to the Court's busy docket and has attempted numerous times to resolve the present issues without Your Honor's intervention, including through four letters and emails directly to GTP, a further letter to the Court, responses to GTP's noninfringement contentions, and several meet and confers – all without any meaningful response from GTP. Most recently, GTP refused to accept LGE's portion of a joint letter to Your Honor and instead elected to file its own letter in an attempt to leapfrog its obligation to provide adequate infringement contentions and reframe the issue as a discovery dispute.[1]

In reality – as LGE has explained to GTP numerous times – this supposed "discovery dispute" would be rendered moot by properly pled claims through adequate infringement contentions. All of the information GTP needs to remedy its contentions is public, and GTP is simply not entitled to use discovery as a fishing expedition while it strategically keeps its options and forces LGE to guess at its actual theories.

Again, LGE is highly sensitive to the Court's busy docket and regrets that it has no choice but to request Your Honor's intervention at this time. We ask Your Honor for leave to compel

---

[1] While GTP makes much in its letter of LGE's refusal to follow a procedure not entered in this case, LGE will not comment on this distraction except to say that LGE also offered to seek guidance from the Court in the form of a teleconference, which GTP refused.

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 2

GTP to provide more definite infringement contentions, after which LGE will be more than happy to provide discovery to which GTP is entitled.

### A.    Background on GTP's Infringement Contentions

GTP first served infringement contentions in July 2021, while this case was still in the Western District of Texas.  On August 13, 2021, LGE sent GTP a letter setting forth numerous alleged deficiencies with its contentions and asking GTP to amend or supplement them.  On April 4, 2022, the Court stayed this case, and it remained stayed until January 18, 2023.  After the case was transferred to this District, GTP again served infringement contentions on LGE on February 17, 2023.  However, when GTP served contentions in February 2023, it added contentions for U.S. Patent No. 7,804,530 (the "'530 patent) that had not been among the contentions in WDTX.  On March 7, 2023, LGE sent a letter to GTP regarding, in part, alleged deficiencies in GTP's infringement contentions and requesting withdrawal of the infringement contentions for the '530 patent claims.  This Court instructed GTP to file a motion to amend its contentions to assert the '530 patent.  On January 26, 2024, GTP filed the motion to amend its infringement contentions as instructed (D.E. 93-1), attaching its amended infringement contentions to the motion (D.E. 93-2).  The motion is fully briefed and currently pending before Your Honor.  *See* D.E. 93, 96 and 97.  The Court instructed the parties to proceed with litigating only the '949 patent while the motion to amend was pending, and so on March 12, 2024, LGE served its initial non-infringement contentions on GTP, in part reiterating its belief that GTP's infringement contentions are deficient, along with its unenforceability and invalidity contentions.  On March 24, 2024, GTP served on LGE its responses to Defendants' invalidity contentions.

In accordance with the Court's Order of January 3, 2024 (D.E. 89), this dispute only concerns claim 4 of U.S. Patent No. 8,878,949 patent (the "'949 patent).  Claim 4 of the '949 patent recites:

4. The portable device of claim 1 wherein the electro optical sensor is fixed in relation to the digital camera.

1. A portable device comprising:

[1a] a device housing including a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor; and

[1b] a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor, wherein the processing unit is adapted to:

[1c] determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, and control the digital camera in response to the gesture performed in the electro-optical sensor field of view,

[1d] wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory.

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 3

GTP's infringement contentions consist of a cover pleading and (setting aside the other claim charts unrelated to Claim 4) claim charts of Claim 4 and Claim 1, from which Claim 4 depends.  *See* GTP's February 17, 2023 Infringement Contention Cover Pleading, attached as **Exhibit A**; *see also* Exhibit C to GTP's February 17, 2023 Infringement Contention Cover Pleading, attached as **Exhibit B**.

The Cover pleading lists 145 LGE accused products and includes a chart that "identifies the Accused Products along with specific components found in each Accused Product that form the basis of GTP's infringement contentions against each Accused Product."  Exhibit A at 2. Below is an excerpt from this chart relevant to certain aspects of the dispute:

| Device Model | "Cameras and Sensors" | "Display" | "Light Sources" | "Processors or Systems-On-Chips" | Year |
|---|---|---|---|---|---|
| **LG G Vista (CDMA)**[7] | Front Camera - 1.3 MP<br><br>Rear Camera - 8 MP, Laser AF<br><br>Proximity Sensor | IPS LCD | Laser AF, LED flash | Quad-core 1.2 GHz | 2014 |

[ . . . ]

| | | | | | |
|---|---|---|---|---|---|
| **LG G Stylo**[15] | Front Camera - 5 MP<br><br>Rear Camera - 8 MP, f/2.4, Laser AF<br><br>Proximity Sensor | IPS LCD | Laser AF, LED flash | Qualcomm MSM8916 Snapdragon 410 (28 nm), Quad-core 1.2 GHz Cortex-A53 | 2015 |

*Id.* at 4, 6.

Each of the products in this chart is footnoted with a link to product information, either on LGE's website or a third-party website.  *See, e.g.*, *id.*

In addition to the above excerpted chart, the entirety of which is attached to this Letter, GTP's infringement contentions also include purported claim charts.  The relevant portion of the chart for Claim 4, and Claim 1 from which it depends, is reproduced below:

| 4. The portable device of claim 1 wherein the electro-optical sensor is fixed in relation to the digital camera. | The electro-optical sensors of the Accused Products are fixed in relation to the digital camera.<br><br>Specifically, each of the Accused Products includes electro-optical sensors including, but not limited to, the Cameras and/or Sensors specified in PIC, Identification of Accused Instrumentalities, which operate as electro-optical sensor(s), and associated hardware and |
|---|---|

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 4

| U.S. Patent No. 8,878,949 Claim Elements | Evidence of Use |
|---|---|
| | software.  Each of the Accused Products include a digital camera fixed in relation to the electro-optical sensor(s).  *See* PIC, Identification of Accused Instrumentalities. |

| U.S. Patent No. 8,878,949 Claim Elements | Evidence of Use |
|---|---|
| 1[Pre] A portable device comprising:[1] | The preamble is not limiting.  To the extent it is found to be limiting, each of the Accused Products is a portable device. |
| 1[a] a device housing including a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor; and | Each of the Accused Products includes a housing, including, but not limited to, the body, casing, or shell of the device, the housing including a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor.<br><br>Specifically, each of the Accused Products includes cameras including, but not limited to, the Camera(s) specified in Preliminary Infringement Contentions ("PIC"), Identification of Accused Instrumentalities and associated hardware and software.  One or more of the Cameras and/or Sensors operate as an electro-optical sensor separate from the digital camera. |
| 1[b] a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor, wherein the processing unit is adapted to: | Each of the Accused Products includes a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor.<br><br>Specifically, each of the Accused Products includes a computer including, but not limited to, its Processors or Systems-On-Chips and associated hardware and software.  *See* PIC, Identification of Accused Instrumentalities.  The Processors or Systems-On-Chips provided in each of the Accused Products are within the device housing and operatively coupled to an output of the electro-optical sensor. |
| 1[c] determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, and | The Accused Products determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output.<br><br>Specifically, each of the Accused Products uses its Processors or Systems-On-Chips, Camera(s), and/or Sensor(s) (*see* PIC, Identification of Accused Instrumentalities) to |

[1] GTP alleges that LG infringes Clams 4, 11, and 18 of the '949 Patent.  Claim 1 is included because Claim 4 is a dependent claim of independent Claim 1.  Claim 8 is included because Claim 11 is a dependent claim of independent Claim 8.  Claim 13 is included because Claim 18 is a dependent claim of Claim 13.

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 5

| U.S. Patent No. 8,878,949 Claim Elements | Evidence of Use |
|---|---|
| digital camera to store an image to memory. | optical sensor field of view, wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory.<br><br>The gestures corresponding to an image capture command that can be determined by the Accused Products and used to control the digital camera include, but not limited to, gestures associated with: Air Motion, Auto shot, gesture shot, gesture interval shot, live photo, PDAF, AI Cam, Auto Scene Optimizer, and AI Composition.<br><br>*See, e.g.,*<br>https://www.lg.com/us/support/products/documents/VELVET_5G_UW_PDF_Specsheet_VZN_08042020.pdf<br>https://www.forbes.com/sites/scottkramer/2018/06/24/does-lgs-new-smartphone-ai-cam-make-it-worth-the-purchase/?sh=32fe499b7095<br>https://www.technobezz.com/use-gesture-shot-lg-g6/<br>https://www.lg.com/in/support/product-help/CT20150018-20150129236515<br>https://www.verizon.com/support/knowledge-base-224624/<br>https://www.lg.com/us/support/help-library/lg-v20-selfie-camera-CT10000026-20150217117068<br><br>This limitation may also be informed by source code, and GTP reserves the right to assert additional theories under the doctrine of equivalents in response to claim construction positions that LG may adopt or the production of source code for software-based limitations. *See, e.g.,* L. Pat. R. 3.7. |

| U.S. Patent No. 8,878,949 Claim Elements | Evidence of Use |
|---|---|
| | determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output.<br><br>The gestures performed in the electro-optical sensor field of view that can be determined by the Accused Products include those associated with, but not limited to, the following features: Air Motion, Auto shot, gesture shot, gesture interval shot, live photo, PDAF, AI Cam, Auto Scene Optimizer, and AI Composition.<br><br>*See, e.g.,*<br>https://www.lg.com/us/support/products/documents/VELVET_5G_UW_PDF_Specsheet_VZN_08042020.pdf<br>https://www.forbes.com/sites/scottkramer/2018/06/24/does-lgs-new-smartphone-ai-cam-make-it-worth-the-purchase/?sh=32fe499b7095<br>https://www.technobezz.com/use-gesture-shot-lg-g6/<br>https://www.lg.com/in/support/product-help/CT20150018-20150129236515<br>https://www.verizon.com/support/knowledge-base-224624/<br>https://www.lg.com/us/support/help-library/lg-v20-selfie-camera-CT10000026-20150217117068<br><br>This limitation may also be informed by source code, and GTP reserves the right to assert additional theories under the doctrine of equivalents in response to claim construction positions that LG may adopt or the production of source code for software-based limitations. *See, e.g.,* L. Pat. R. 3.7. |
| 1[d] control the digital camera in response to the gesture performed in the electro-optical sensor field of view, wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the | The Accused Products control the digital camera in response to the gesture performed in the electro-optical sensor field of view, wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory.<br><br>Specifically, each of the Accused Products uses its Processors or Systems-On-Chips and Camera(s) to control the digital camera in response to the gesture performed in the electro- |

Exhibit B at 1-4.

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 6

I.       **LGE's Position and Basis for Requesting Relief**

This is not a single-issue discovery dispute as GTP contends, and it did not begin when LGE served its discovery responses in late April. To the extent any actual dispute exists, it stems entirely from the material deficiencies in GTP's infringement contentions that LGE first identified nearly three years ago, has repeatedly raised with GTP, and which GTP has steadfastly refused to correct.

LGE has already told GTP that it will provide any discovery to which GTP is entitled, subject to reasonable objections, for accused products and infringement claims that have been adequately identified and pled through proper claim charts. But as explained below (and previously to GTP in writing several times going back several years), GTP should not be allowed to leapfrog its pleading and contentions obligations to fish for evidence of claims it has not adequately pled and products it has not properly accused.

GTP's contentions are severely deficient. To adequately allege direct infringement and identify the accused products actually at issue in this case, GTP must plead facts that plausibly indicate that specific LGE products practice each of the limitations of claim 4. GTP has completely missed that mark and has instead provided only a cursory list of a mere handful of asserted claim elements that are matched, loosely at best, to omnibus product hyperlinks with no meaningful ties between even those few claim elements included in the "charts" and the hyperlinked information. GTP then goes further backwards by providing a bare list of the names of an additional 145 LGE products and argues those products are also somehow "charted" and "accused" by reference. In short, GTP's contentions here do not pass muster in this District or any other and, until properly amended, do not trigger any further discovery obligation on LGE's part. GTP's position that it is entitled to full discovery on some 145 products for which it has not even attempted to provide infringement contentions is without legal basis and flies in the face of judicial equity. The *quid pro quo* of patent litigation is made clear in this District's rules—first Plaintiff identifies accused products *by providing meaningful infringement contentions as to each accused product*, and then Defendant provides discovery on those charted accused products. *See* D.N.J. Local Pat. R. 3.1 (setting requirement for a plaintiff to provide invalidity contentions). Because GTP has not adequately pled that LGE's accused products practice each of the limitations of claim 4 of the '949 patent, GTP is not yet entitled to discovery on these products.

GTP must provide adequate infringement contentions, not only to satisfy its pleading obligations so that LGE may provide unburdensome discovery in this case, but also to ensure efficiency for both the parties and the Court later on if necessary, for example by tying claim construction to GTP's actual theories, and not a shapeshifting morass where LGE is forced to shoot at a moving target.

A.       **GTP's Infringement Contentions Are Severely Deficient**

GTP's infringement contentions are deficient and fail to provide LGE with adequate notice of which products and functionalities GTP accuses of infringing claim 4 of the '949 patent. As discussed above, GTP's infringement contentions consist of a cover pleading and a claim chart. The cover pleading includes an omnibus list of 145 "accused products." These are the same products that GTP has accused since the beginning of this case, despite the fact that when this case began it consisted of four patents and 72 asserted claims and not just the one patent and one asserted claim that is now at issue (claim 4 of the '949 patent). *See* D.E. 57 at 3-5.

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 7

Claim 4 of the '949 patent is the only claim asserted in this case.  Infringement of Claim 4 (which depends on Claim 1) requires a product to meet eight separate claim elements:

Claim 1, element 1: A portable device comprising:

Claim 1, element 2: a device housing including a forward facing portion,

Claim 1, element 3: the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor; and

Claim 1, element 4:  a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor, wherein the processing unit is adapted to:

Claim 1, element 5:  determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, and

Claim 1, element 6: control the digital camera in response to the gesture performed in the electro-optical sensor field of view, wherein the gesture corresponds to an image capture command, and

Claim 1, element 7:  wherein the image capture command causes the digital camera to store an image to memory.

Claim 4, sole element: The portable device of claim 1 wherein the electro-optical sensor is fixed in relation to the digital camera.

Any sufficient infringement contentions must address how *each specific accused product* meets *each of these eight claim limitations* in at least enough detail for Defendant to understand and meaningfully respond to the contentions *See* D.N.J. Local Pat. R. 3.1(c) (providing a plaintiff must provide in infringement contentions "a chart *identifying specifically* where *each limitation* of *each asserted claim* is found within *each Accused Instrumentality* . . . ." (emphasis added)).

GTP fails even this most basic standard.  For each product in the so-called "cover chart," excerpted above, GTP does not address the majority of the asserted claim elements.  Instead, GTP merely lists an LGE model number and identifies only the alleged "cameras and sensors" of the device, the "displays," the "light sources," the "processors or systems-on-chips," and the year of first sale of the device.  Even viewed in its most favorable light, GTP's infringement contentions thus fail to adequately provide notice of GTP's actual infringement allegations.  First, GTP's chart excludes a majority of the asserted claim terms.  Second, of the categories listed, only two elements ("cameras and sensors" and "processors of systems-on-chips") even arguably appear in Claim 4, and understanding the allegations regarding even those two elements require LGE to make certain assumptions insofar as GTP's categories do not use the actual claim language (claim 4 recites "an electro-optical sensor," a "digital camera separate from the electro-optical sensor" and a "processing unit").  Finally, likely due to the physical differences in the many products on the omnibus list of 145 products, GTP muddies the water by sometimes listing multiple product features under one claim term, as well as by listing a single product feature under multiple claim terms.  LGE is left to guess at GTP's theories.

GTP's chart of claim 4, attached as Exhibit B and reproduced in the Background section above, *supra* Section I.A., fares no better.  As a threshold matter, although the chart refers to the omnibus list of claims, the claim chart itself only includes hyperlinks to a handful of product

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 8

information, not all 145 accused products.  To the extent that GTP accuses only a subset of devices for this claim, then that must be made clear.

In addition, there are a number of limitations in claim 4 that GTP simply ignores.  For instance, limitation 1[c] of the '949 patent requires that the subject portable device "determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output."  Rather than identify the specific hardware that it contends performs this limitation, GTP states only that the accused products use some unarticulated and, so far, hypothetical combination of "Processors of Systems-On-Chips, Camera(s), and/or Sensor(s)."  Any accusation so vague as to recite merely generic "Processors of Systems-On-Chips, Camera(s), and/or Sensor(s)" is not helpful to LGE in understanding what GTP is actually accusing in this case.  Such vague and deliberately obscuring contentions are exactly the kind of allegations this District's Rules are intended to avoid.  LGE cannot discern from GTP's infringement contentions what specific hardware in the accused LGE devices GTP contends meets the asserted limitation.

GTP resorts to conclusory statements that certain product features perform the claimed functionality for other claim terms as well.  For example, GTP states for Claim 1, element 5 ("determine a gesture has been performed . . .") that "the gestures that can be determined by the accused products include those associated with, but not limited to, the following features: 'Air Motion, Auto shot, gesture shot, gesture interval shot, live photo, PDAF, AICam, Auto Scene Optimizer, and AI Composition.'"  When charting this asserted claim element, GTP merely provides a laundry list of apps and features on the accused devices, without any explanation as to how gestures are used in any of these apps or functions.  This is insufficient.  Indeed, many of the listed apps and features do not appear to have any connection to claim 4.  The functionality of the listed apps and features can be easily obtained from publicly available sources and the accused devices themselves, so there is no basis for GTP's failure to provide actual infringement contentions on this (or any other) claim element.

To be clear, the LGE products GTP has (at most) named are *not* all identical in function, construction, or operation.  But GTP ignores the meaningful, and in many cases dispositive, differences in the 145 products it lists.  Instead, GTP conflates and confuses a variety of hardware—cameras and sensors most importantly—in an attempt to avoid identifying each feature with specificity with regard to each accused product.  For example, Claim 1 recites a digital camera and a "*separate*" electro-optical sensor on a "forward facing portion of the device housing."  Exhibit B at 1.  For the "digital camera" element, GTP's claim chart points to the "camera" entries in the cover sheet (like the one above), and for the separate electro-optical sensor element, GTP's claim chart states that "one or more of the cameras and/or sensors operate as an electro-optical sensor separate from the digital camera."  *Id.*  This allegation makes no sense, at least because—as demonstrated by the excerpt above—GTP's "accused product" list often identifies only *one* camera on the front and rear of each device, thereby precluding the two cameras from collectively meeting the claim limitations (*i.e.*, because the front and rear cameras are not both situated on the "forward facing portion of the device housing" as the claim requires).  The only other remaining "sensor" identified by GTP is a "proximity sensor," but GTP does not identify any accused functionality that relies on the proximity sensor output (a requirement under limitation 1[c], element 5).  It is therefore impossible to determine from GTP's contentions how or why GTP believes the accused products meet the limitations of claim 4.[2]  It

---

[2]  For twenty-six LGE products listed in GTP's infringement contentions cover sheet, the impossibility of determining GTP's theory of infringement is even more pronounced. For those

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 9

also is impossible for LGE to respond to interrogatories from GTP such as "[d]escribe and identify the devices and applications that detect, identify, or interpret gestures."

Finally, GTP's contentions make reference to infringement under the doctrine of equivalents, but GTP provides absolutely zero legal or factual basis for any purported contention that the accused products infringe under the doctrine of equivalents. *See, e.g.*, *Razor USA v. DGL Grp.*, No. 19-12939, 2022 U.S. Dist. LEXIS 1807 (D.N.J. Jan. 5, 2022) ("Courts in this district have emphasized that a general assertion of infringement under a doctrine of equivalents theory does not satisfy the requirements of Local Rule 3.1(e)."). The cover pleading to GTP's contentions provides only a passing reference to the doctrine of equivalents, and the attached claim chart (Exhibit B), which supposedly sets forth the basis for GTP's claims of infringement, contains only a passing invocation of a similar caveat without any factual support. GTP's contentions do not disclose which, if any, legal test for infringement under the doctrine equivalents is being applied. GTP's contentions do not identify which, if any, limitations in claim 4 are not literally present in the accused products and are therefore allegedly infringed under the doctrine of equivalents. And GTP's contentions fail to identify the factual basis for any assertion that any such limitations are infringed under the doctrine of equivalents. Thus, GTP has failed to disclose any theory of infringement under the doctrine of equivalents.

LGE maintains serious concerns that GTP lacks a good faith basis for the facially impossible infringement theories asserted in GTP's contentions. LGE respectfully requests that the Court instruct GTP to fix the allegations in its infringement contentions—both to identify *only* products alleged to infringe claim 4 of the '949 patent, and to state a coherent theory of infringement *that reflects how each accused product meets each asserted claim element*—so that LGE can decipher how to appropriately respond to GTP's discovery requests.

### B.     The Information GTP Needs to Remedy Its Infringement Contentions is Public

The information GTP would need to remedy its infringement contentions is available publicly. For example, and as GTP implicitly acknowledges through its numerous hyperlink cites in its infringement contentions, information on LGE's products is available through websites, data sheets, and purchasing any accused products. Indeed, GTP does not need discovery on its laundry list of products to be able to accuse them. *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. 04-1536, 2005 WL 3988905, at *1 (D. Del. Oct. 7, 2005) ("If you want to go out, you want to buy [the accused products], you want to do the tear-downs, you want to get information that prompts you to be able to say 'now I know that this specific model also infringes,' then you can certainly do that. And then you would be in an area where you could be requiring additional discovery from them. But to ask them to come forward in the first instance, which is what it really comes down to, is not right."). In light of this, GTP's shortcomings are even more glaring.

---

products, GTP identifies just a single front and rear camera—no other sensors are identified. *See* Exhibit A at 2-3, 10-12, 16, 19, 23, 31-32, 44, 48-51 (accusing LG G3 (CDMA); LG G3 S Dual (LG G3 Beat Dual); LG Nexus 5X; LG K3; LG Classic; LG K8 (2017); LG X Venture; LG K40; LG K20; LG G8X ThinQ; LG G Pad 10.1; LG G Pad 7.0 LTE; LG G Pad 8.0 / LG G Pad 8.0 LTE; LG G Pad F7.0; LG G Pad X8.3; LG G Pad F 8.0; LG G Pad II 8.0 HD+; LG G Pad X 10.1; LG G Pad II 10.1; LG G Pad F 8.0 ACG; LG G Pad X 8.0; LG G Pad F 8.0 2nd Gen; LG G Pad X II 10.1; LG G Pad II 8.0 Plus; LG G Pad F 8.0 2nd Gen ACG; LG G Pad 5 10.1 FHD).

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 10

## C.     GTP Is Not Entitled to Discovery on Inadequately Pled Allegations

Given GTP's failure to properly accuse any LGE products of infringement, GTP has not adequately asserted infringement of these products. GTP is required to plead facts that plausibly indicate that LGE's accused products practice each of the limitations of claim 4. *See Genedics, LLC v. Meta Co.*, No. 17-1062, at *24-25 (D. Del. Aug. 21, 2018) ("In order to adequately allege direct infringement, generally a plaintiff must plead facts that plausibly indicate that the alleged infringer's accused products practice each of the limitations of the asserted claims."); *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017); *see also Raindance Techs., Inc. v. 10x Genomics, Inc.*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2-3 (D. Del. Mar. 4, 2016). GTP has not attempted to meet this standard.

GTP is not entitled to discovery on inadequately pled facts. *See Dymnioski v. Crown Equip. Corp.*, No. 11-3696, 2012 WL 1986584, at *6 (D.N.J. June 4, 2012) ("It is not the purpose of notice-pleading under Rule 8(a), nor is it the intent of the liberal amendment provisions of Rule 15, to permit litigation to proceed along this course. 'Discovery . . . cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded.'" (quoting *Giovanelli v. D. Simmons Gen. Contracting*, No. 09-1082, 2010 WL 988544, at *5 (D.N.J. Mar. 15, 2010)). Similarly, discovery is not meant to serve as a basis for plaintiffs to develop a legal theory on which they can prevail. *See Plastipak Packaging, Inc. v. DePasquale*, 363 F. App'x 188, 192 (3d Cir. 2010); *see also Burns v. Lavender Hill Herb Farm, Inc.*, 167 F. App'x 891, 894 (3d Cir. 2006) (rejecting argument that plaintiff was entitled to go on 'a court-anointed fishing expedition' in attempt to meet pleading requirement of establishing personal jurisdiction over a defendant"); *Honeywell Int'l Inc.*, 2005 WL 3988905, at *1 ("But what you are not entitled to do is to say you manufacture 15 different kinds of cell phones. We tore down three. Tell us about your other 12. . . . [T]hat is not what the law requires, and it's not what I'm going to require them to do.").

## D.     GTP Has Refused to Correct Its Deficient Contentions for Nearly Three Years

LGE has described the many material failures in GTP's contentions multiple times in numerous forums and across multiple forms over the many years of this litigation. But GTP has not once responded. LGE first identified the deficiencies in August 2021, in response to GTP's July 2021 infringement contentions in WDTX. *See* August 13, 2021 Letter, attached as **Exhibit C**. GTP did not meaningfully respond to LGE's letter, and refused to meet and confer, so LGE sent a follow-up letter. However, the case was transferred to this District before LGE could raise the issue with the WDTX court. After GTP served LGE with the operative infringement contentions in February 2023, LGE again sent a letter—on March 7, 2023—setting out the substantially similar deficiencies therein. *See* March 7, 2023 Letter, attached as **Exhibit D**. GTP again did not respond, and the case was stayed on April 13, 2023 with the issue still unresolved. Finally, on March 12, 2024, LGE served its initial non-infringement contentions. Throughout those contentions, LGE reiterated its concerns regarding the deficiencies in GTP's infringement contentions and explained how those deficiencies failed to put LGE on notice of the actual nature and scope of GTP's claims. LGE expressly noted that GTP had not responded to LGE's March 7, 2023 letter.[3] LGE also reiterated this position during the parties' May 8 and May 23, 2024 meet

---

[3] In its position above, GTP contends that it provided another set of amended infringement contentions along with its pending Motion to Amend. D.E. 93-1. To be clear, as *GTP stated* in its Motion, the provided contentions are "*proposed amendments* to its infringement contentions,"

Hon. Michael A. Hammer, U.S.M.J.
June 6, 2024
Page 11

and confers.  And to make sure the record was clear and explain why GTP's current dispute stemmed from its inability to provide sufficient contentions, on May 29, 2024 LGE sent another letter to GTP on this issue.  Accordingly, LGE has now sent GTP four letters on this issue.  To date—even in GTP's operative letter—GTP has not substantively responded to LGE's concerns and has made no attempt to cure the facial insufficiencies encumbering its contentions.

### E.      LGE Can and Will Respond to Discovery When GTP Serves Actual Contentions

As LGE has stated many times, LGE is willing to provide all discovery to which GTP is entitled.  It is unfair and unduly burdensome, however, for LGE to be forced to guess at GTP's real allegations in this case, guess what products might meet those hypothetical allegations, and then guess at what discovery might be relevant on the supposed accused products in response to the hypothetical allegations.  GTP has not made even the slightest effort to define the scope of its infringement case, and GTP's failure to meet its obligations has other negative downstream effects.  In particular, the deficiencies prevent LGE from properly developing its noninfringement defenses, preparing invalidity and noninfringement contentions, engaging in the claim construction process, and conducting discovery investigation.  Moreover, the deficiencies substantially hinder LGE's ability to produce or make available, in accordance with L. Pat. R. 3.2A, "document[s] or thing[s] that [LGE] intends to rely on in defense against any such Infringement Contentions."  For instance, without any information about what functionality in the accused apps and features GTP contends meet the limitations of the asserted claims, LGE is unable to determine which technical documents should be collected and produced.  And given that GTP has included allegations against devices and/or features with no apparent connection to the claim language—and indeed, which could very well be connected to patents or claims that were invalidated by the PTAB and no longer at issue here—LGE is further prejudiced by having to potentially gather and produce documents that ultimately will be irrelevant to any claims or defenses in the case.  It is thus critical that GTP immediately supplement its contentions to correct the deficiencies identified in this letter.  And because of GTP's continued failure and refusal to provide its good faith basis for its claims, LGE reserves all right to seek attorneys' fees related to this case.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).

LGE thanks Your Honor for Your committed attention to this matter and looks forward to discussing this matter with You, should You so request.  Should Your Honor have any questions, we are available at Your convenience.

Respectfully submitted,

*s/Liza M. Walsh*

Liza M. Walsh

Enclosures
cc:      All Counsel of Record (via ECF & email)

---

not a new set of contentions as GTP now claims.  *Id.* at 1 (emphasis added).  In any event, because the contentions concerning claim 4 of the '949 patent—the only patent currently in this case—are the same across these contentions, LGE's deficiency arguments equally apply.