**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GESTURE TECHNOLOGY PARTNERS, LLC, | : : : **Civil Action No. 21-19234 (SRC)** |
| Plaintiff, | : : **OPINION & ORDER** |
| v. | : : |
| LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC., | : : : |
| Defendants. | : |

**CHESLER**, District Judge

This matter comes before the Court on the motion for judgment on the pleadings that claim 4 of the '949 patent is not patent-eligible subject matter under 35 U.S.C. § 101, by Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LG"). Plaintiff Gesture Technology Partners, LLC ("Gesture") has opposed the motion.

Under Third Circuit law:

> A motion for judgment on the pleadings under Rule 12(c) "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." Consequently, the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and may not grant the motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Thus, in deciding a motion for judgment on the pleadings, a court may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (citations omitted).

LG has moved for judgment on the pleadings that claim 4 of the '949 patent is not patent-eligible subject matter under 35 U.S.C. § 101; LG contends that claim 4 is directed to an abstract idea and is invalid under the Alice/Mayo framework.  One claim, dependent claim 4, of U.S. Patent No. 8,878,949 (the "'949 patent"), is at issue on this motion.  Claim 4 depends from independent claim 1:

> 1. A portable device comprising:
>
> a device housing including a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor; and
>
> a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor, wherein the processing unit is adapted to:
>
>> determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, and
>> control the digital camera in response to the gesture performed in the electro-optical sensor field of view, wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory.
>
> 4. The portable device of claim 1 wherein the electro-optical sensor is fixed in relation to the digital camera.

LG contends that claim 4 is directed to an abstract idea and is patent ineligible under 35 U.S.C. § 101, pursuant to the analysis set forth in Alice.  LG begins with this summary of its argument:

> Claim 4 of the '949 patent fails both steps of the Supreme Court's two-step analysis for patent eligibility as set forth in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Claim 4 – which claims a "portable device" that captures a photograph in response to an observable cue (like the subject smiling, or saying "cheese") – is directed to mere abstract ideas performed on generic hardware. Because claim 4 is neither a particular improvement in technology nor an abstract idea that embodies an inventive concept, it fails both steps of the *Alice* test for patentability.

(Defs.' MJP Br. at 1.)

LG contends that a recent Federal Circuit decision that "closely mirrors this case" is Yanbin Yu v. Apple Inc., 1 F.4th 1040, 1043 (Fed. Cir. 2021). Because LG finds this case quite relevant, the Court begins with its summary of the law. In Yu, the Federal Circuit summarized the legal standard as follows:

> In analyzing whether claims are patent eligible under § 101, we employ the two-step *Mayo/Alice* framework. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70-73, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012). First, we determine whether a patent claim is directed to an unpatentable law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217. If so, we then determine whether the claim nonetheless includes an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78).
>
> . . .
>
> We have approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art. In conducting that inquiry, we must focus on the language of the asserted claims themselves, considered in light of the specification.

1 F.4th at 1043.

At the outset, the Court notes that, while LG contends that Yu mirrors the instant case, LG has not followed the law set forth by the Federal Circuit in Yu: at Alice step one, the inquiry begins "by asking what the patent asserts to be the focus of the claimed advance over the prior art." Id.; see also McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.") LG has not done so: LG's opening brief does not ask "what the patent asserts to be the focus of the claimed

3

advance over the prior art," as required by Yu, or whether the patent focuses on a specific means that improves the relevant technology, as required by McRO.[1]  In doing so, LG overlooks this specification statement: "This invention is aimed at improvements in utilization of these cameras and others which make use of a computer based camera's ability to analyze, in real time if desired, the images obtained."  '949 patent, col.1 ll.57-60.  Thus, while the patent expressly states that it is aimed at improvements over the prior art, LG has disregarded the subject.  See Cosmokey Sols. GMBH & Co. KG v. Duo Sec. LLC, 15 F.4th 1091, 1099 (Fed. Cir. 2021) (specification's statements about improvement over prior art support determination that claim is directed to a patent-eligible improvement).  As a result, this motion is a non-starter.  LG has failed to follow Federal Circuit law about how to perform step one of the Alice inquiry.  The motion will be denied.  Nonetheless, the Court will proceed to discuss additional reasons to deny this motion.

As the Federal Circuit stated in Yu, at the first step of the Alice analysis, the Court determines whether claim 4 is directed to an abstract idea.  LG contends that claim 4 is directed to an abstract idea but offers only a brief explanation in support.  In opposition, Gesture argues: "LG oversimplifies claim 4 and improperly fails to analyze the actual language of the claim."  (Pl.'s Opp. Br. at 6.)   The Court agrees, but would go further: LG does not merely oversimplify claim 4, but ignores all of the details set forth in claims 1 and 4.[2]  LG makes its step one

---

[1] To the contrary, LG relies considerably on its contention that the patent specification admits that the abstract idea claim 4 is directed to "a concept long known to photographers and practiced by the human mind."  (Defs.' Br. at 12.)  As will be explained in the discussion which follows, LG has not persuaded the Court that claim 4 is directed to that particular abstract idea, nor that LG has correctly understood the purported admission in the specification.

[2] See McRO, 837 F.3d at 1313 ("We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the

4

argument using a highly general view of the claimed subject matter, dismissing all the details as "generic technology," as if that addresses them sufficiently. LG offers this summary of its argument, quoted here in its entirety, at step one:

> Claim 4 is not "inherently related to any particular computer or other apparatus," and the patent itself acknowledges that taking photographs in response to observable cues-such as a subject posing-has long been practiced in the human mind. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011). Thus, claim 4 is an abstract concept under *Alice* Step 1.

(Defs.' MJP Br. at 1-2.)

The Court finds LG's attempt to demonstrate that claim 4 is directed to an abstract idea to be problematic and unpersuasive, for several reasons. LG contends that the abstract idea is "taking photographs in response to observable clues." (Defs.' Br. at 13.) In a nutshell, LG has not persuaded this Court that claim 4 may reasonably be reduced to the abstract idea of "taking photographs in response to observable clues." For example, consider the plain language of independent claim 1, which includes these limitations: "wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory." The Court views these as important aspects of the claimed invention, but LG does not address the idea of a gesture, corresponding to an image capture

---

specific requirements of the claims"); TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.), 823 F.3d 607, 611 (Fed. Cir. 2016) ("But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.' *Alice*, 134 S. Ct. at 2354"); Thales Visionix, Inc. v. United States, 850 F.3d 1343, 1347 (Fed. Cir. 2017) ("We must therefore ensure at step one that we articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful.")

5

command, which causes the camera to store an image.[3] On this ground alone, the Court cannot agree that claim 4 is merely an application of long-known photographic practice to a generic device.

Similarly, LG's proposed abstract idea of "taking photographs in response to observable clues" appears divorced from the statements in the specification regarding the "self timer" functionality of the device. For example, consider these specification statements:

- It is a goal of the invention to provide a method for taking pictures when certain poses of objects, sequences of poses, motions of objects, or any other states or relationships of objects are represented. It is also a goal to allow this to be done in a self timer like mode, when desired scene situations or specific dates or other circumstances exist. '949 patent, col.1 l.63-col.2 l.1.
- It is a further goal of the invention to provide means by which users engaged in digital camera based activities, or other activities, using a computer can have their pictures taken. '949 patent, col.2 ll.9-12.
- FIG. 3 illustrates a self timer like mode, or when specific dates or other circumstances exist, including a system embodiment for taking pictures in shopping malls or other locales and providing instant print or other hardcopy capability (e.g. on a tee shirt). '949 patent, col.2 ll.41-45.
- In a manner resembling that of FIGS. 2A-2D above, the invention can also serve to aid a person to take his or her own picture—a modern "Self timer" if you will. For example any or all of the criteria such as the items 1-7 above, can be used as criteria for the picture to be taken of oneself. This is in addition to other more normal things like taking pictures after a certain time, or on a certain date or time interval, etc. This has particular appeal for taking pictures of one's self, or in any other situation where the photographer is not present (e.g. unattended recording of animals, children, etc.). Similarly, a hand signal or other signal to the camera can be used to trigger the picture to be taken, using the computer camera combination to determine the hand position or movement. '949 patent, col.7 ll.42-54.
- Today, in a conventional context, one can as a photographer, choose to shoot a fashion model or other subject, and when you see a pose you like record the picture. But as one's own photographer, this is much more difficult, unless you stream in video and search through the poses after the fact. But even then, you don't know that the poses were what was desired, as no feedback exists during the shoot. '949 patent, col.7 ll.57-63.

---

[3] LG's brief in support of this motion scarcely acknowledges the role of the gestural image capture command in the claim at issue.

These specification statements support the inference that an important aspect of the functioning of the invention is the capacity to enable photography subjects themselves to issue gestural commands to a device in order to have a photograph taken. Claim 1 requires that the device respond to a gestural capture command from the subject. LG's proposed abstract idea, "taking photographs in response to observable clues," does not appear to reflect this important characteristic of the invention of claim 4.[4] Compared to claim 4 as it is written in the '949 patent, the claim 4 LG describes in its brief is overgeneralized and oversimplified.

Another issue is that claim 1 is an apparatus claim, directed to a portable device with particular characteristics and components, and dependent claim 4 adds in the requirements that "the electro-optical sensor is fixed in relation to the digital camera." Thus, when LG asserts, without explanation, that claim 4 is not inherently related to any particular apparatus, the Court inquires how an apparatus claim, in which the apparatus is defined by a listed set of particular components, is not related to any particular apparatus? This requires, at a minimum, a persuasive explanation, and none has been given.

As Gesture contends in opposition, LG has oversimplified claims 1 and 4 as if they claim the basics of the process of photography. As already noted, LG argues: "the patent itself acknowledges that taking photographs in response to observable cues-such as a subject posing-has long been practiced in the human mind." In support, LG cites this specification statement:

> Today, in a conventional context, one can as a photographer, choose to shoot a fashion model or other subject, and when you see a pose you like record the picture.

---

[4] Gesture, on the other hand, makes this general statement about the subject matter of claim 4: it "relates in general to detecting a gesture and performing functions in response to the detected gestures." (Pl.'s Opp. Br. at 4.) This general statement at least appears to reflect the "self timer" aspect of the invention and the functionality of gestural image capture commands.

7

'949 patent, col.7 ll.57-59. In this sentence, the patent does indeed acknowledge that taking photographs in response to observable cues is a conventional activity. The truth of that statement is not disputed but does very little to help LG persuade the Court that the device of claims 1 and 4 is an abstract idea.[5]

Furthermore, the Court notes that LG has taken this single sentence from the specification out of context. The statement appears in the following paragraph:

> Today, in a conventional context, one can as a photographer, choose to shoot a fashion model or other subject, and when you see a pose you like record the picture. But as one's own photographer, this is much more difficult, unless you stream in video and search through the poses after the fact. But even then, you don't know that the poses were what was desired, as no feedback exists during the shoot.

'949 patent, col.7 ll.57-63. In this paragraph, the patentees distinguish the conventional photography process expressed in the first sentence from a different scenario, one in which the person acts as his/her own self-photographer, and there is a crucial distinction from the conventional photographic scenario: if you act as your own photographer, you do not receive visual feedback from the camera during the shoot. LG overlooks this, and it is an important distinction: in this specification example, the invention is directed not to the conventional scenario in which a photographer chooses a pose of a subject and takes the picture, but instead to a scenario in which a person wants to photograph himself or herself, and encounters a problem due to the lack of visual feedback from the camera. LG does not recognize the distinction and

---

[5] "A claimed method's similarity to 'fundamental . . . practices long prevalent' is yet another clue that the claims may be abstract and unpatentable." Beteiro, LLC v. Draftkings Inc., 104 F.4th 1350, 1356 (Fed. Cir. 2024). LG has failed to persuade that the method that can be inferred from claim 4 (which includes gestural image capture commands) is nothing more than the long prevalent fundamental practice of photography in response to observable cues.

8

the differences, but overlooks them, reducing the invention to a process typical of conventional photography.

Moreover, to the extent that LG contends that this proposed idea can be performed in one's mind, it would be in the mind of a photographer; the patent expressly targets situations "where the photographer is not present." '949 patent, col.7 l.50. In whose mind does the implied process occur, then, if the photographer is not present? Furthermore, the human mind cannot take photographs.

LG has failed to persuade the Court that claims 1 and 4 disclose a process, and that that process can be practiced in the human mind. It must be repeated that claims 1 and 4 are device claims, and there is a wide gap between the disclosed device and a process that can be practiced in the human mind. To the extent that claim 4 implies a process,[6] it is not the process of a traditional photographer, waiting with camera in hand for the subject to strike the perfect pose. Instead, as the specification explains, it is a process in which a traditional photographer may not be present; a photographic subject issues the command to take the picture, and the camera responds to the gesture made by the subject directing the taking of the picture.[7] Thus, LG has

---

[6] The Court here writes that claim 4 implies a process because, as already stated, claims 1 and 4 are apparatus claims, not process claims. As readers, we may interpret them so as to infer a sequence of events in some picture-taking scenario, but that is the thinking of a reader, not what is actually claimed in claims 1 and 4.

[7] If we were to adopt this formulation of the abstract idea (to include the process in which a photographic subject issues the command to take the picture, and the camera responds to the gesture made by the subject directing the taking of the picture), there is a statement in the specification which may be relevant to the question of what the patent asserts to be the focus of the claimed advance over the prior art: "There is no known picture taking reference based on object position and orientation with respect to the camera, or other objects that I am aware of." '949 patent, col.1 ll.44-46. On a motion for judgment on the pleadings, this factual assertion is taken as true and, at a minimum, suggests an advance over the prior art.

9

confused and inverted the implied process: claim 4 implies that the subject directs the taking of the photograph, a process different from traditional photography in a number of important ways. In the implied scenario, the director of the action is the subject in front of the camera, not a photographer behind it. How is this the same as traditional photography?

Having clarified that the process implied by claims 1 and 4 makes the photography subject the director, the Court inquires whether this process can be practiced in the human mind, setting aside the question of whether it has long been practiced so. LG, however, understood the implied process differently and did not address this question; it is not apparent to the Court how this implied process (with gestural control commands) can be practiced in the human mind, and the Court is not persuaded that there is any justification for this proposition. LG has failed to persuade the Court that the subject matter of claim 4 is an abstract idea.

LG relies on Yu, but Yu may be readily distinguished. Yu involved a patent on an improved digital camera; the Federal Circuit affirmed the district court's determination that the claim at issue was patent-ineligible under Alice. Yu, 1 F.4th at 1042. The Federal Circuit stated: "We agree with the district court that claim 1 is directed to the abstract idea of taking two pictures (which may be at different exposures) and using one picture to enhance the other in some way." Id. at 1043. The patentee did not dispute that "the idea and practice of using multiple pictures to enhance each other has been known by photographers for over a century." Id. The crucial distinction between Yu and the instant case is that Yu involved a camera "improvement" that produced the same kind of results in a similar way to that performed by photographers for a century. In the instant case, the current record before this Court does not support the inference that the claimed camera improvement does the same thing that

10

photographers have already done for years.  Although LG contends that claim 4 is directed to the abstract idea of "taking photographs in response to observable cues," which coincides with traditional photography, the Court reads claim 4 very differently.  As already explained, claim 4 is directed to a camera that may take photos of a subject in the absence of a traditional photographer.  Furthermore, the camera of claim 4 takes the picture at the direction of the photography subject, who commands the camera to act by performing a pre-set gesture.  LG's proposed abstract idea does not adequately characterize claim 4 whereas, in Yu, the district court and the Federal Circuit agreed that the claim at issue was direct to the proposed abstract idea.  Moreover, in the instant case, the patent specification provides intrinsic evidence supporting two distinctions: 1) the specification distinguishes the invention, when used to take selfies, from traditional photography because of the absence of visual feedback to the subject directing the camera; and 2) the specification states that the prior art lacks any "picture taking reference based on object position and orientation with respect to the camera." '949 patent, col.1 ll.44-46.  Unlike in Yu, the record before this Court offers no basis to find, at this juncture, that claim 4 is directed to an abstract idea that has long been practiced in the art of photography.

     A more apposite case for comparison is the recent Federal Circuit decision in Contour, a case about patents that "disclose a hands-free, POV action sports video camera that is configured for remote image acquisition control and viewing." Contour IP Holding LLC v. GoPro, Inc., 113 F.4th 1373, 1375 (Fed. Cir. 2024).  As in the instant case, GoPro filed a Rule 12(c) motion, asserting patent-ineligible subject matter, and relied on Yu. Id. at 1377.  The district court denied the Rule 12(c) motion, and GoPro raised the issue again on summary judgment, at which time the district court agreed with GoPro. Id. at 1378.  Of particular interest

here is that the claimed invention functioned so as to enable some remote control of the POV camera. Id. at 1377.

On appeal, the Federal Circuit reversed the district court's summary judgment decision. Id. at 1379. The Court explained:

> At *Alice* step one, we determine whether the claims are directed to patent ineligible subject matter. We often examine the "focus of the claimed advance over the prior art." We conduct this analysis by ascertaining the "basic character" of the claimed subject matter. In doing so, we must avoid describing the claims at a high level of abstraction, divorced from the claim language itself.
>
> To determine the focus of the claimed advance at *Alice* step one, we look to whether the claims are directed to "a specific means or method that improves the relevant technology" rather than simply being directed to "a result or effect that itself is the abstract idea." An improved result, without more, is not enough to support patent eligibility at *Alice* step one. When a claim "abstractly cover[s] results" without regard to a specific process or machinery for achieving those results, it creates preemption concerns because it "would prohibit all other persons from making the same thing by any means whatsoever."
>
> . . .
>
> The district court's decision characterizes the claims at an impermissibly high level of generality. As we have noted, the practice of "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." For example, in this case, the district court's conclusion that the claims were "directed to a result or effect that itself is the abstract idea" disregards the disclosed technological means for obtaining a technological result. The district court erred in its generalized articulation of the claimed advance of the claims, which all but ensured the incorrect conclusion that the claims were drawn to an abstract idea.

Id, at 1379-80. Similarly, in the instant case, LG has described claim 4 at a high level of abstraction and untethered from the language of the claim. Similarly, LG has disregarded the disclosed technological means for achieving a result. Most importantly, at Alice step one, the Contour Court examined the details of the claims and concluded:

> The claims are directed to a technological solution to a technological problem. The written description discloses improving POV camera technology through specific means of generating high-and low-quality video streams in parallel and transferring a low-quality video stream to a remote device, and the claims reflect this improvement. The claims, therefore, recite patent eligible subject matter at *Alice* step one.

Id. at 1380-81. This Court today will not speculate on what might have been the outcome had LG performed the Alice step one analysis in accordance with Federal Circuit law. But there are factual similarities between this case and Contour that are food for thought. First, both cases involve claims related to remote operation of a digital camera. The Contour Court examined the claims and found a specific technological solution to a technical problem. As to claim 11, the Contour Court observed that it "enables the claimed POV camera to 'operate differently than it otherwise could.'" Id. at 1380. In the instant case, it appears that, similarly, claim 4 enables the claimed camera to operate differently than it otherwise could, without the invention.

Furthermore, in response to GoPro's argument that the invention was constructed from only conventional components, the Federal Circuit stated: "that *alone* does not necessarily mean that the claim is *directed* to an abstract idea at step one." Id. at 1380. LG makes the same argument here, and the Federal Circuit's statement applies equally. The fact that conventional components are employed does not negate inventiveness.

Lastly, the Contour Court rejected GoPro's argument that Yu was analogous and distinguished Yu as follows:

> In *Yu,* there was no dispute that "the idea and practice of using multiple pictures to enhance each other has been known by photographers for over a century." *Id.* Stated differently, in *Yu*, we took note of a longstanding, fundamental practice in photography, without conducting a prior art search. Here, GoPro does not argue that a camera's recording two video streams in parallel and wirelessly transferring the lower quality video stream to a remote device for real time viewing and

13

>adjustment was a long-known or fundamental practice supporting patent ineligibility at *Alice* step one.

Id. at 1380. Note that, in Contour, the Court considered the specifics of the claimed technological solution ("recording two video streams . . .") and asked whether *that* was a long-known practice in the art. In the instant case, LG does not argue, for example, that gestural image capture commands issued by the photographic subject to the camera itself have been a long-known practice in the art of photography. What LG *does* argue is that claim 4, considered very generally and ignoring all the specifics of the technological solution, appears to be long-known. That analysis does not comport with the guidance of the Federal Circuit in Contour.

In sum, comparison of the instant case to Contour highlights a number of significant defects in LG's case at Alice step one for judgment of on the pleadings of ineligible subject matter.

Given LG's failure to persuade that, at step one of the Alice analysis, claim 4 is directed to an abstract idea, the Court need not reach step two of the Alice inquiry. Even if this Court had agreed with LG that claim 4 is directed to an abstract idea, however, it still could not have granted the motion for judgment on the pleadings. Gesture points to the Supreme Court's formulation of step two in Alice:

>In *Mayo*, we set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. *Id*., at 77, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 337). If so, we then ask, "[w]hat else is there in the claims before us?" Id., at 78, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 337). To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id*., at 79, 78, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 337.

14

Alice, 573 U.S. at 217.  Gesture argues that LG failed to consider the elements of claim 4 both individually and as an ordered combination, and this Court agrees: LG paid little attention to the elements of claim 4 and did not perform the required step two inquiry.

>Furthermore, as to step two, the Federal Circuit has stated:

>At step two, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. at 78-79). The second step of the Alice test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 134 S. Ct. at 2359).

>The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.

Berkheimer v. HP Inc., 881 F.3d 1360, 1367-68 (Fed. Cir. 2018).  Under Berkheimer, LG needs to prove, by clear and convincing evidence, that the combination of elements in claim 4 is well-understood, routine and conventional to a skilled artisan in the relevant field.  Having glossed over the specifics of the elements of claims 1 and 4, LG has not come close to carrying this burden.

In addition, Gesture points out that the specification contains a factual statement material to patentability: "There is no known picture taking reference based on object position and orientation with respect to the camera, or other objects that I am aware of." '949 patent, col.1 ll.44-46.  "[T]he presumption of validity afforded to patents under § 282 applies equally to all grounds of validity, including the eligibility of the claimed subject-matter." Astellas Pharma, Inc. v. Sandoz Inc., 117 F.4th 1371, 1378 (Fed. Cir. 2024).  Pursuant to Astellas and Berkheimer, this specification statement in a valid patent is sufficient to raise a factual dispute over whether

15

the combination of elements in claim 4 is well-understood, routine and conventional to a skilled artisan in the relevant field. See CardioNet, LLC v. InfoBionic, Inc., 955 F.3d 1358, 1369 (Fed. Cir. 2020) (on a Rule 12(b)(6) motion, "all factual inferences drawn from the specification" are made in favor of the non-movant).

In conclusion, LG has presented a case in support of its motion for judgment on the pleadings which overlooks nearly all the details of the component elements of the device claimed in claim 4 – in particular, ignoring the limitations related to the gestural image capture command –, dismissing the specified components as generic, then oversimplifying and overgeneralizing the eviscerated claim 4, with the end result being the contention that there is nothing there that is not the abstract idea, `"taking photographs in response to observable clues." Having reduced claim 4 to this proposed abstract idea through oversimplification, LG argues that claim 4 is invalid under § 101. The abstract idea proposed by LG appears to be a distant gloss on the specific device claimed in claim 4, offered without persuasive justification. Furthermore, LG has not complied with the requirements of Federal Circuit law for the conduct of the Alice inquiry. LG has not clearly established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. The motion is denied.

For these reasons,

**IT IS** on this 23rd day of December, 2024

**ORDERED** that Defendants' motion for judgment on the pleadings (Docket Entry No. 100) is **DENIED**.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge